## NO. 14-4273

In The
United States Court of Appeals
For The Fourth Circuit

**CURTIS R. MARTIN,**

**Appellant,**

**v.**

**UNITED STATES OF AMERICA,**

**Appellee.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
_____

**BRIEF OF APPELLANT**
_____

Stuart O. Simms
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Telephone: (410) 962-1030
Facsimile: (410) 385-0869
sos@browngold.com

*Attorney for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES .......................................................... 1

STATEMENT OF THE CASE ............................................................. 1

STATEMENT OF FACTS ................................................................... 6

SUMMARY OF THE ARGUMENT ................................................... 21

STANDARD OF REVIEW ............................................................... 21

ARGUMENT ................................................................................... 22

     I.    The District Court Erred in Concluding that There Was
Sufficient Evidence Proving an Assault. ............................. 22

     II.   The District Court Erred in Concluding that Appellant
Failed to Disclose his Employment. .................................... 24

     III.  The Abuse of Discretion in this Case is Not Harmless
Error. .................................................................................. 27

CONCLUSION ............................................................................... 28

REQUEST FOR ORAL ARGUMENT ............................................. 29

RULE 32(A) CERTIFICATE OF COMPLIANCE ............................. 29

CERTIFICATE OF SERVICE ........................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*United States v. Canterbury*,
    292 F.App'x 235 (4th Cir. 2008) ................................................................. 21

*United States v. Carothers*,
    337 F.3d 1017 (8th Cir. 2003) ................................................................... 21

*United States v. Copley*,
    978 F.2d 829 (4th Cir. 1992) .................................................................... 22

*United States v. Doswell*,
    670 F.3d 526 (4th Cir. 2012) .................................................................... 27

*United States v. Feola*,
    420 U.S. 671 (1974) ............................................................................... 22

*United States v. Gallo*,
    20 F.3d 7 (1st Cir. 1974) ......................................................................... 26

*United States v. Hillsman*,
    522 F.2d 454 (7th Cir. 1975) .................................................................... 23

*United States v. Hugs*,
    384 F.3d 762 (9th Cir 2004) ..................................................................... 27

*United States v. Loy*,
    273 F.3d 251 (3d Cir. 2001) ..................................................................... 27

*United States v. Martin*,
    248 F.3d 988 (9th Cir. 2002) ................................................................. 2, 6

*United States v. Matheny*,
    523 F.App'x 996 (4th Cir. 2013) ............................................................... 23

*United States v. Paul*,
    274 F.3d 155 (5th Cir. 2001) .................................................................... 26

*United States v. Pregent*,
    190 F.3d 279 (4th Cir. 1999) .................................................................... 21

*United States v. Wallace*,
  368 F.2d 537 (4th Cir. 1966) ....................................................................... 22

*United States v. Woods*,
  710 F.3d 195 (4th Cir. 2013) ....................................................................... 27

**Statutes**

18 U.S.C. § 1001 ............................................................................................... 9

18 U.S.C. § 111 ..................................................................................... 10, 19, 22

18 U.S.C. § 1114 ............................................................................................. 22

18 U.S.C. § 1343 ............................................................................................... 8

18 U.S.C. § 3557 ............................................................................................... 1

18 U.S.C. § 3742 ............................................................................................... 1

**Rules**

Fed. R. Crim. P. 29 ................................................................................... 19, 24

Fed. R. Crim. P. 32 ....................................................................................... 11

## STATEMENT OF JURISDICTION

Pursuant to 18 U.S.C. §§ 3557 and 3742(a) (1), this Court has jurisdiction to review a sentence if the defendant or Appellant is alleging that the sentence imposed was in violation of law.

As set forth in more detail below, the Appellant submits that the revocation of his term of supervised release and the imposition of a sentence of incarceration by the District Court was an abuse of that Court's discretion and was in violation of law.

## STATEMENT OF THE ISSUES

The District Court conducted a hearing concerning allegations that Appellant, Curtis Martin, violated certain conditions of his term of supervised release. Was the District Court's finding that Appellant violated those conditions and revocation of Appellant's supervised release term an abuse of discretion?

## STATEMENT OF THE CASE

This case arises from the March 18, 2014 conviction and sentencing of Appellant, Curtis Martin, in United States District Court for the District of Maryland for multiple violations of the conditions of his supervised release. The conditions for supervised release were imposed on Appellant as part of a sentence

for his conviction of several offenses in 2000.[1]  The conviction and sentencing for the violations in the present case followed a hearing in the United States District Court for the District of Maryland and resulted in a sentence of imprisonment for 18 months and an additional 18 months of supervised release.[2] The Appellant submitted a timely appeal. [3]

On January 14, 2008, the Appellant was sentenced in the United States District Court for the Eastern District of California to a term of imprisonment for 162 months for a conviction for mail fraud, wire fraud, and other offenses.[4] As part of the sentence, the Court imposed a supervised release term of three years with several special conditions:  (1) the defendant's satisfactory participation in a mental health program; (2) defendant to provide the probation officer with access to any requested financial information; (3) defendant shall not incur new credit card charges or open additional lines of credit without the approval of the probation officer; and (4) the defendant shall submit to the search of his person, property, home, and vehicle by a United States probation officer or other authorized person without a search warrant.[5] The Appellant was ordered to pay

---

[1] JA 001.  The length of the original sentence of September 21, 2000 was later modified.  *See, United States v. Martin*, 248 F.2d 988 (9th Cir. 2002).

[2] JA 012; 606.

[3] JA 619.

[4] JA 001-006. See note 1 above.

[5] JA 004.

restitution in the amount of $4,507,302.40 and a special assessment of $400.[6]

The Appellant remained in custody outside the District of Maryland until his arrival to the Volunteers of America in Baltimore, Maryland on July 27, 2010.[7] The Appellant was released to community supervision on December 23, 2010.[8] His case had a maximum expiration date of December 22, 2013.[9]

On October 24, 2013, a United States Probation and Pretrial Services Officer submitted a petition on supervised release to the United States District Court for the District of Maryland.[10]  The petition alleged the following violations of Appellant's conditions of release:  (1) Curtis Martin failed to answer inquiries by the probation officer to him on April 23, 2010, during a review of his financial affidavit, in violation of the standard conditions of release; (2) Curtis Martin failed to report any change or addition of employment within ten days in violation of a standard condition of probation; (3) on or about July 3, 2011, Curtis Martin falsely reported credit information on an application to lease an automobile; (4) Curtis Martin made false, fictitious, and fraudulent statements in monthly supervision reports by failing to report or list all employment, self-employment, or third party employers; (5) Curtis Martin made false, fictitious, and fraudulent statements in his

---

[6] JA 006.
[7] JA 075-076.
[8] JA 075.
[9] JA 129.
[10] JA 009; 015.

Financial Statement of Debtor, in reports submitted to the United States Probation and Pretrial Services Office by failing to report and/or list all employment, self-employment, or third party employers; (6) Curtis Martin made false, fictitious, and fraudulent statements in his Financial Statement of a Debtor by failing to list all lawsuits in which he was a party; (7) Curtis Martin failed to provide or list all financial information regarding self-employment, business entities, creditors, and civil lawsuits in which he was a party in violation of a special condition of probation; and (8) Curtis Martin attempted to obtain and obtained credit and additional lines of credit without the approval of the probation officer in violation of one of the special conditions of probation.[11]

The petition concerning Appellant's alleged violations of the conditions of supervised release was signed by the Court on October 24, 2013 and a warrant was issued for the Appellant's arrest.[12] On December 3, 2013, the warrant was executed by law enforcement officers.[13] During the execution of the warrant, Appellant allegedly attempted to avoid capture. On December 4, 2013, a ninth charge of willful assault and resisting or impeding arrest was alleged as a violation of Appellant's supervised release.[14]

---

[11] JA 034-038.
[12] JA 015.
[13] JA 047-073.
[14] JA 038. (The petition itself was never formally unsealed. It is included as a sealed document to this brief).

On December 4, 2013, the District Court conducted an initial appearance of the Appellant.[15] Following the hearing, an Order of Detention was entered.[16]

On January 15, 2014, the District Court commenced proceedings regarding the allegations contained in the petitions requesting a revocation of Appellant's supervised release.[17]  The hearing continued on January 23, 2014.[18] The Appellant was appointed new counsel on January 24, 2014, and the hearing resumed on March 18, 2014.[19]

Following the hearing on March 18, 2014, the District Court found Appellant in violation of charges One, Two, Three, Four, Five, Six, Seven, Eight, and Nine in the petitions.[20] After advising the parties of the finding and revoking the Appellant's supervised release, the Court noted that the applicable sentencing guidelines for Appellant are 24 to 30 months.[21] After argument of both counsel, the Court sentenced Appellant to imprisonment for 18 months with a supervised release term of 18 months.[22]

On March 27, 2014, Appellant noted an appeal.[23]

---

[15] JA 016-029.
[16] JA 030.
[17] JA 031-175.
[18] JA 176-194.
[19] JA 011.
[20] JA 295.
[21] JA 308-309
[22] JA 308-318.
[23] JA 619.

## STATEMENT OF FACTS

On January 23, 2008, Appellant was sentenced to a 162-month term of

incarceration after being convicted of various non-violent offenses.[24]  Mr. Martin's

term of incarceration was to be followed by a three-year period of supervised

release with the standard supervision conditions,[25] and the following special

---

[24] JA 001.  Mr. Martin was convicted of Mail Fraud, Wire Fraud, Interstate
Transportation of Fraudulently Obtained Property, and Money Transactions in
Criminally Derived Property and originally received a sentence of 188 months.
The Appellant appealed, see, *United States v. Martin*, 248 F.3d 988 (9th Cir. 2002)
and the sentence of 162 months was imposed.

[25] JA 003-004.  The standard conditions of supervision were as follows:
1) the defendant shall not leave the judicial district without the
permission of the court or probation officer;
2) the defendant shall report to the probation officer in a manner and
frequency directed by the court or probation officer;
3) the defendant shall answer truthfully all inquiries by the probation
officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other
family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless
excused by the probation officer for schooling, training, or other
acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior
to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not
purchase, possess, use, distribute, or administer any controlled
substance or any paraphernalia related to any controlled substances,
except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances
are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal
activity and shall not associate with any person convicted of a felony,
unless granted permission to do so by the probation officer;

conditions:

the defendant shall--

1)    Satisfactorily participate in a mental health treatment program;

2)    Provide the probation officer with access to any requested financial information;

3)    Not incur any new credit charges or open any additional lines of credit without approval of the probation officer;

4)    Submit to the search of his person, property, home, and vehicle by a U.S. Probation Officer or other authorized person without a search warrant;

5)    Pay $4,507,302.40 in restitution and a $400 Special Assessment.[26]

While serving his sentence in the Federal Bureau of Prisons, Appellant requested that his term of supervised release be supervised in the District of Maryland.[27]  In July of 2010, Appellant arrived in Maryland and temporarily

---

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

[26] JA 004.
[27] JA 076-079.

resided in a transition residence.[28]  On December 23, 2010, he was released to

community supervision under the supervision of the United States Probation and

Pretrial Services.[29]

Based on an investigation conducted by officers of the United States

Probation and Pretrial Services, allegations were filed asserting that Appellant,

over a period of three years, committed various violations of his supervised release

conditions.  On October 4, 2013, a petition was filed alleging:

- Charge 1—that Curtis Martin failed to answer inquiries put to him by his probation officer on April 23, 2013, during their review of his financial affidavit, in violation of Standard Condition Number 3, which states that the defendant shall answer truthfully all inquiries by, and follow the directions of, the probation officer.

- Charge 2—that Curtis Martin failed to report any change or addition of employment, whether self-employed or by third party, in violation of Standard Condition Number 6, which states that the defendant shall notify the probation officer ten days prior to any change in residence or employment.

- Charge Number 3—that Curtis Martin, on or about June 3, 2011, did falsely report credit information on an application used to lease a 2000 Lexus automobile from Lexus of Rockville, which was submitted to Lexus Financial for funding by way of the Internet, which constitutes wire fraud, pursuant to 18 United States Code, Section 1343, in violation of the statutory condition which states that he shall not commit any federal, state, or local crime.

- Charge Number 4—that Curtis Martin knowingly and willfully made false, fictitious, and fraudulent statements in his Monthly Supervision Reports, a report submitted to the U.S. Probation Department, within the jurisdiction of the Judicial Branch of government, by failing to

---

[28] JA 078.
[29] JA 075.

report and/or list all employment, self-employment or other third-party employers, which include: NetCareMD, LLC; Oledix Technologies, LLC, REO Maintenance Solutions, LLC; NetCare MD Virtual Clinics, LLC; Oledix Store, LLC; NetCareMD Community Clinics, LLC; and EMRX Healthcare Technologies Corporation, under Section E of the Monthly Supervision Report, which constitutes a false statement by omission, pursuant to 18 United States Code, Section 1001, in violation of the statutory condition which states that he shall not commit any federal, state, or local crime.

- Charges Number 5—that Curtis Martin did knowingly and willfully make false, fictitious, and fraudulent statements in his Financial Statement of Debtor, in reports submitted to the U.S. Probation Department, within the jurisdiction of the Judicial Branch of government, by failing to report and/or list all employment, self-employment, or other third-party employers, which include: NetCareMD; LLC Oledix Technologies, LLC; REO Maintenance Solutions, LLC; NetCareMD, LLC; Oledix Store, LLC; NetCareMD Community Clinics, LLC; and EMRX Healthcare Technologies Corporation, under Section 2 and Section 3 of the form, which constitutes a false statement by omission, pursuant to 18 United States Code, 1001, in violation of a statutory condition which states that he shall not commit any federal, state, or local crime.

- Charge Number 6—that Curtis Martin did knowingly and willfully make materially false, fictitious, and fraudulent statements in his Financial Statement of Debtor, a report submitted to the U.S. Probation Department, within the jurisdiction of the Judicial Branch of the government, by failing to list all lawsuits that he was a party to, which include Brianna Clark, Financial Pacific Leasing, Stephen Kirks, and Fidelity Capital Partners, under Section 6 of the form, which constitutes a false statement by omission, pursuant to 18 United States Code, Section 1001, in violation of the statutory condition which states that he shall not commit any federal, state, or local crime.

- Charge 7—that Curtis Martin failed to provide or list all financial information regarding self-employment, business entities, creditors, and civil lawsuits to which Curtis Martin was a party, in violation of the additional condition which states that the defendant shall provide the probation officer with access to any requested financial information.

- Charge 8—that Curtis Martin attempted to obtain, and did obtain, additional lines of credit, without the approval of the probation officer, in violation of the additional condition which states that the defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer.[30]

As part of the petition, the probation officer requested an arrest warrant, and on October 24, 2014, the Court authorized the issuance of the warrant.[31] The warrant was executed on December 3, 2013, by members of the United States Marshal Service and other law enforcement personnel.[32] The circumstances surrounding the Appellant's apprehension yielded an additional charge:

- Charge 9—[Curtis Martin] did knowingly and willfully assault, resist or impede said officers or employees by attempting to flee the scene of his arrest on December 3, 2013, a violation of 18 U.S.C., Section 111, in violation of the statutory condition which states that he should not commit any federal, state, or local crime.[33]

On December 4, 2013, an initial appearance and a detention hearing were held in the United States District Court for the District of Maryland.[34] The Court advised the Appellant of the charges and heard arguments from the counsel for the government and counsel for the defendant concerning release.[35] The Court entered an Order of Detention.[36]

---

[30] JA 034-038.
[31] JA 015.
[32] JA 047-073.
[33] JA 038.
[34] JA 010; 016-029
[35] Id.
[36] JA 010; 030.

On January 15, 2014, a hearing commenced concerning the petitions for an alleged violation by Curtis Martin of the terms of his supervised release.[37] The Court reviewed the notices of violation, the charges in those violations, and the process for the hearing pursuant to Rule 32.1 of the Federal Rules of Criminals Procedure.[38]

The initial witness at the hearing was Nayim Sadik, a Maryland State Trooper. Trooper Sadik was one of several law enforcement officers who assisted in the arrest of the Appellant on December 3, 2013.[39] After locating the Appellant's vehicle in an alley in the back of the Appellant's residence, law enforcement officers began surveillance of the Appellant from both sides of the alley.[40] Sadik testified that he observed Appellant exit the residence and enter his vehicle and that he and a Deputy U.S. Marshal approached the rear of the vehicle. [41]According to Sadik, as they were approaching the rear of Appellant's vehicle, the Appellant pulled into the right-side rear parking area of another residence. The Deputy U.S. Marshal pulled up behind Appellant's vehicle and Sadik got out of the passenger side of his unmarked truck.[42] According to Sadik, he was wearing a State Police issued black vest with a state police badge and a placard that stated

---

[37] JA 011; 031.
[38] JA 033-043.
[39] JA 047-048.
[40] JA 49-50.
[41] JA 50-51.
[42] JA 52-53.

police.[43] At some point, just before Sadik got out of the truck, the Deputy U.S. Marshal activated lights and siren on his vehicle.[44]  When Sadik got out of the truck, he was about 7 to 10 feet from the right-rear of the Appellant's car.[45]  Sadik testified that he gave commands to Appellant to show his hands, and he saw the Appellant turn and look at him and the Appellant's vehicle proceeded in reverse at a high rate of speed.[46] Sadik moved from the path of the Appellant's car, and the car then travelled forward down the alley about 30 yards before the car stopped and the Appellant, at the direction of Sadik, turned off the vehicle, placed the car's gear in park, and provided him the keys.[47]

On cross examination, Trooper Sadik testified that the law enforcement team was aware of the address of Appellant.[48]  No prior surveillance was performed prior to that day and the operation was essentially "covert."[49] The events took place about 8:00-8:30 a.m.[50] He further testified that when the Appellant came from his house he was not acting or moving in an unusual manner. Sadik was not wearing an official police uniform.[51]  According to Sadik, after Appellant first

---

[43] JA 50; 52.
[44] JA 51.
[45] JA 52.
[46] JA 53.
[47] JA 056.
[48] JA 058.
[49] JA 061; 069.
[50] JA 065.
[51] JA 063.

stopped the vehicle, the Appellant turned and looked at Sadik and Sadik was at a 45-degree angle away from the right-rear quarter panel of the vehicle.[52]  At that point, the Appellant backed up his car and Sadik moved.[53]  The primary purpose of the lights and sirens was to get another vehicle out of the way of the truck containing Sadik and the Deputy U.S. Marshal.[54]  On re-cross, Sadik stated that the Appellant stated to him that he did not know he was a police officer.[55]

William Tavik, a probation officer with the United States Probation and Pretrial Services, testified.  Tavik identified the Judgment and Commitment Order governing the Appellant's sentence that included the terms of his supervised release.[56]  Before Appellant's community release in December 2010, Tavik met Appellant.[57]  Upon Appellant's release, he first resided in Frederick, Maryland, with his brother.[58]  Appellant's supervision was temporarily transferred when the Appellant began living with his girlfriend in Gaithersburg, Maryland. [59]  While Appellant was under Tavik's supervision, Tavik was alerted to some alleged involvement of Appellant in illegal activity.[60]

---

[52] JA 067.
[53] JA 068.
[54] Id.
[55] JA 072.
[56] JA 075.
[57] JA 078.
[58] JA 079-080.
[59] JA 080-081.
[60] JA 084.

Tavik documented his supervision of Appellant through supervision reports that were entered into evidence.[61] As of January 2011, Tavik's reports reflected that Appellant reported that he was living in Frederick, Maryland, and employed by Netcare Data Management Corporation in Baltimore, Maryland.[62] During Mr. Tavik's supervision of Appellant, he was never informed that his employment changed.[63]

Tavik reviewed a series of documents that were admitted into evidence as part of Exhibit 3. The documents included:

- A form reflecting that a Mr. Sherk was apprised of Appellant's status as a former federal prisoner;[64]

- A form—Financial Statement of a Debtor, signed by Appellant in April 2013, as part of Appellant's request for early termination of supervision. The form lists the Appellant's residence in Frederick, Maryland; employment for NetCare Data Management of Columbia, Maryland; no indication of self-employment; lists one credit card; lists no pending lawsuits; projects an increase in salary; lists no business assets or encumbrances;[65]

- A certificate of incorporation for the State of Delaware for NetCare Data Management Corporation dated September 1, 2010;[66]

- A certificate of conversion, State of Delaware, for NetCare Data Management Corporation to NetCareMD Community Clinics, July 21, 2011;[67]

---

[61] JA 084-089.
[62] JA 087.
[63] Id.
[64] JA 340-356.
[65] JA 357-363.
[66] JA 364-365.

14

- A certificate of formation for state of Delaware for NetCareMD, LLC, August 11, 2011 reflecting Curtis Martin as a manager;[68]

- A certificate of amendment, State of Delaware, NetCareMD, LLC, October 12, 2011;[69]

- A form—corporate charter approval in Maryland for Oledix Technologies, LLC as a wholesale dealer in electronic and telecommunication equipment and listing Appellant as resident agent;[70]

- A form—corporate charter approval in Maryland for REO Maintenance Solutions, LLC and listing Appellant as resident agent;[71]

- Credit Application for automobile lease by Oledix Technologies, LLC signed by Appellant and listing Appellant as President, CEO, and 60% owner of company;[72]

- Certificate forming an LLC for NetcareMD Virtual Clinics dated July 29, 2011, and listing Curtis Martin as a managing member of the company;[73]

- Operating Agreement for the Oledix Store, October 1, 2011, signed by Appellant;[74]

- Certificate of Incorporation, District of Columbia, for NetCareMD Virtual Clinics, LLC;[75]

- Certificate of Incorporation, District of Columbia, for NetCareMD Community Clinics, LLC;[76]

---

[67] JA 366-369.
[68] JA 370-371.
[69] JA 372-373.
[70] JA 374-378.
[71] JA 379-384.
[72] JA 385-392.
[73] JA 393-394.
[74] JA 395-419.
[75] JA 420-422.
[76] JA 423-426.

- District Court State of Maryland Complaint; Stephen Kurtz, plaintiff; Oledix Technologies, LLC and Curtis Martin, defendants, and docket history;[77]

- District Court State of Maryland Complaint; *Pawnee Leasing Corporation v. Oledix Technologies*, and docket history;[78]

- Docket history of *Brianna Clark v. Oledix Technologies and Curtis Martin* in the Circuit Court for Baltimore City;[79]

- Certificate of Incorporation, District of Columbia, EMRX Heathcare Technologies, LLC, listing Appellant as incorporator;[80]

- Order of Default Judgment and docket history in the Circuit Court for *Baltimore City of Financial Pacific Leasing, LLC v. Oledix Technologies, LLC*;[81]

- UCC financing statements filed by several firms concerning equipment or inventory advanced to Oledix Technologies;[82]

- Credit card and lease applications for Oledix Technologies or Curtis Martin.[83]

Tavik testified that Appellant never informed him of any change of employment, self-employment, and involvement as a party in lawsuits or involvement with Oledix or other corporate entities.[84]  Mr. Tavik produced his notes that had not been previously disclosed so completion of his cross-

---

[77] JA 427-437.
[78] JA 438-443.
[79] JA 444-461.
[80] JA 462-464.
[81] JA 465-504.
[82] JA 505-516.
[83] JA 517-534.
[84] JA 115.

examination was deferred.[85]

Patrick Franklin, an employee of Merritt Properties, testified concerning his firm's leasing of retail and office space to Oledix Technologies. The negotiations regarding the lease were conducted with Appellant who Mr. Franklin understood to be the chief operating officer.[86] The lease was admitted into evidence and provided for rent of $134,000 per year.[87] Despite some payments by Appellant, Oledix owed Merritt Properties a past due amount of $110,000.[88]

New counsel for Appellant entered his appearance in the case on January 23, 2014.[89]

The revocation hearing of Appellant continued on March 18, 2014.[90] Mr. Tavik was recalled and cross-examined by defense counsel. Mr. Tavik testified that in July 2012, Appellant had informed him through a reporting system of a change of address of employment from Baltimore, Maryland to Columbia, Maryland.[91] Mr. Tavik never visited the Columbia, Maryland address or ever discussed the nature of Appellant's business efforts including the use of

---

[85] JA 132.
[86] JA 139-140.
[87] JA 142-143; 577-598.
[88] JA 148.
[89] JA 011.
[90] JA 012; 198.
[91] JA 202-203.

telemedicine technology.[92] Mr. Tavik met Appellant on May 23, 2014, and inquired about a pending financial affidavit and asked about Appellant's association with any business but did not state whether he communicated his understanding of what was included in association to the Appellant. [93] Based on Tavik's agency's security assessment, the Appellant's supervision level was high but his overall risk was low.[94]

On redirect examination, Mr. Tavik reviewed his contact reports that were admitted into evidence. [95]He recalled no disclosure by Appellant of working at or for Oledix Technologies.[96]

Deborah Lear testified as part of the government's case concerning the petitions. Ms. Lear is a retired government employee who met Appellant through an online dating service in 2010.[97] The Appellant moved into her Gaithersburg, Maryland home in January 2011.[98] Ms. Lear was aware that Appellant was involved in an entity known as Oledix that was focused on touchscreen technology and services.[99] Over a period just short of two years, she estimated that she loaned the business approximately $600,000 based on use of her savings, lines of credit,

---

[92] JA 205.
[93] JA 206-207.
[94] JA 208.
[95] JA 210; 599.
[96] JA 213.
[97] JA 227.
[98] JA 230.
[99] JA 231-232.

and loans. [100] Ms. Lear was also aware of utilization of two credits cards used by

Oledix, with one card reaching amounts due in excess of $274,000 and another in

excess of $13,000.[101] Those debts resulted in litigation which has been resolved.[102]

On cross-examination, Ms. Lear testified that she did seek other financial advice

including the use of tax advisor concerning her 2011 investment in Oledix and

frequently discussed with the Appellant the financial challenges of the Oledix that

concerned both her and Appellant.[103] The government then rested its case.[104]

The defense moved under Rule 29 of the Federal Rules of Criminal

Procedure for motion for a judgment of acquittal concerning the charges in the

petitions.[105] With regard to charges one through eight, the defense based its

argument on the record.[106] With regard to charge nine, the defense argued that

there was no demonstration of intentional use of force, threat, or evidence of

intimation to constitute an assault under 18 U.S.C. §111.[107] The law enforcement

officers' planned apprehension of Appellant was designed to surprise.  The

evidence reflected that State Trooper Zadik was not in uniform, the Appellant did

not know he was a law enforcement officer, and Zadik's position outside of the

---

[100] JA 233.
[101] JA 236-240.
[102] JA 540-571.
[103] JA 247-251.
[104] JA 256.
[105] Id.
[106] JA 257.
[107] JA 263-264.

Appellant's automobile by his own description placed him in a position where he would not be harmed.[108]

The Court denied the defense's Motion for Judgment of Acquittal.[109] The Court concluded that with regard to charges one through eight; there was evidence before the Court by preponderance of the evidence.[110] With regard to charge nine, the Court construed the evidence and the criminal history of Appellant and concluded that it was Appellant's intent not to comply and to resist arrest.[111]

The defense submitted a letter from an attorney, Christian Pearson, concerning a business association involving him and his father, a physician, concerning NetcareMD and related NetCare entities involving projects related to telemedicine.[112]

After argument by counsel for the government and the Appellant, the Court found violations by Appellant as to all charges.[113]

Immediately following the hearing concerning the violations, the Court moved to sentencing. The government recommended a potential maximum sentence of 24 months based on conviction on Charge Nine, a Category A

---

[108] Id.
[109] JA 270.
[110] Id.
[111] JA 271.
[112] JA 274.
[113] JA 295.

offense.[114]  The defense argued for a sentence less than 24 months and suggested that a sentence of 14 months would be sufficient.[115]

The Court noted that but for charge nine; the guidelines would be 12 to 18 months and noted that there had been no physical violence.[116]  Shortly thereafter, the Court imposed a sentence of a period of incarceration of 18 months, a supervised release term of 18 months, and revoked Appellant's term of supervised release.[117]

On March 27, 2014, Appellant noted this appeal.[118]

## SUMMARY OF THE ARGUMENT

The District Court's finding that Appellant violated his term of supervised release was an abuse of discretion.

## STANDARD OF REVIEW

On appeal, a decision by a District Court revoking a previously imposed term of supervised release is reviewed to determine whether that Court abused its discretion.  *United States v. Pregent*, 190 F.3d 279, 282 (4th Cir. 1999); *United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003) (quoting *United States v. Canterbury*, 292 F.App'x 235, 236-237 (4th Cir. 2008); *United States v. Copley*,

---

[114] JA 296.
[115] JA 306.
[116] JA 307-311.
[117] JA 120-122.
[118] JA 606-609.

978 F.2d 829 (4th Cir. 1992).

## ARGUMENT

**I.    The District Court Erred in Concluding that There Was Sufficient Evidence Proving an Assault.**

To prove a violation 18 U.S.C. § 111, the prosecution must show that a defendant, "forcibly assault[ed], resist[ed], oppos[sed], imped[ed], intimidate[d], or interfere[d] with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties."  18 U.S.C. § 111 (a)(1). According to *United States v. Feola*, 420 U.S. 671 (1974), the defendant must only have the intent to assault, and does not have to exhibit the intent to assault a federal officer to be convicted under 18 U.S.C. § 111 (a)(1).  *Id.* at 684.  However, the Court in *Feola* acknowledged that:

> [T]here may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance and an honest mistake of fact would not be consistent with criminal intent.

*Id.* at 686.

The Fourth Circuit has also held that § 111, "does not proscribe reasonable force employed in a justifiable belief that it is exerted in self-defense."  *United States v. Wallace*, 368 F.2d 537, 538 (4th Cir. 1966).  In scenarios where it is

22

claimed that the defendant was unaware that the individual whom he assaulted was a police officer, the determination of whether the defendant displayed the requisite criminal intent turns on whether "the defendant [would] have been justified, because of the agent's actions, in using force against the agent had the latter, in fact, been a 'civilian.'" *United States v. Matheny*, 523 F.App'x 996, 998 (4th Cir. 2013) (quoting *United States v. Hillsman*, 522 F.2d 454, 460 (7th Cir. 1975)).

In the present case, the District Court's decision is clearly erroneous with regard to charge nine because there was significant evidence in the record rebutting the conclusion that the Appellant knew that Trooper Sadik was a law enforcement officer and establishing that Appellant was not evading or resisting arrest. Sadik was not in traditional police uniform, the vehicle which Sadik exited from was an unmarked vehicle, there were no sirens or police lights activated when Sadik approached Martin, the presence of drawn weapons created an atmosphere of excitement/confusion, and Martin, once apprehended further down the alley, stated to Sadik that "I didn't know you were the police." In addition, there was a clear contradiction in Trooper Sadik's testimony, placing him at the right passenger rear door, seven to ten feet away from Appellant's vehicle and at a 45-degree angle that suggests that the Appellant had neither the intent nor capacity to threaten Trooper Sadik.

Finally, in order to reach the conclusion that the Appellant had the intent to

harm or knew that Trooper Sadik was a law enforcement officer, the Court in assessing the Appellant's motion under Rule 29 of the Federal Rules of Criminal Procedure, imputed knowledge to Appellant based on some unidentified aspect of the Appellant's criminal history and his alleged failure to "quickly comply with the officers."[119]  The Appellant did not testify at the revocation hearing and the record does not reveal what, if any, portion of the Appellant's background the Court relied upon to establish knowledge on December 3, 2013.  The Appellant submits that this extrapolation by the Court was inappropriate and a further abuse of the Court's discretion.

For these reasons, the decision by the District Court finding that Appellant violated charge nine of the petition was an abuse of discretion and the finding should be reversed.

## II.    The District Court Erred in Concluding that Appellant Failed to Disclose his Employment.

Counts One, Two, Four, Five, and Seven of the petition were either partially or wholly dependent on Mr. Martin's failure to disclose to the Department of Probation his involvement in various companies, including Oledix Technologies, which he had formed while on supervised release.[120]  According to Probation

---

[119] JA 271.

[120] JA 100; In addition to evidence concerning Oledix, the government alleged that Mr. Martin created Oledix Store, EMRX, REO Maintenance and NetCareMD.  (JA 100-102).

Officer Tavik, throughout Appellant's supervised release, he represented that he was employed as a sales manager for Netcare Data Management Corp, making approximately $40,000 per year.[121]  Tavik testified that Appellant failed to disclose his employment with any companies aside from Netcare Data Management in supervision reports and other forms filed periodically throughout his term of supervised release.[122]  Additionally, Tavik testified that in various conversations he had with Appellant, when asked specifically about employment, Appellant allegedly did not disclose involvement with any business aside from the sales manager position with Netcare Data Management.

        In this case, there was no specificity or proof by the government with regard to Appellant's employment or lack thereof.  Appellant was employed by Netcare.[123]  The government presented evidence that Appellant filed various corporate charter documents, but the government did not establish the existence of an "employment" relationship that violated Mr. Martin's obligations under his supervised release order.  Notwithstanding the suspicions of the probation officer, Netcare was Appellant's employer and was also the "generating source" of his income.[124]  Appellant submits that allegations One, Two, Four, and Five, all concerning his statements in monthly reports and his responses to Probation

---

[121] JA 087.
[122] JA 086-088.
[123] JA 265.
[124] JA 289.

Officer Tavik's questions, rely on Tavik's assumption and interpretation that Appellant's business ventures were employment.  Therefore, the monthly supervision report and the representations in allegation number Four rely on the assumption that Oledix was an employer.  Oledix was a business venture but not an employer.  Based on the phraseology of both the general supervision directives, as well as the special conditions of supervised release, and Mr. Tavik's inquiries, the question of employment was narrowly construed by Appellant in terms of special supervision, and Appellant answered accurately.

Standard Condition Six required Appellant to "notify the probation officer ten days prior to any change in residence or employment," and the monthly supervision reports required Appellant to answer questions concerning his employment generally.  To this end the term employment was open-ended and not precise.  The act of filing corporate documents is not employment *per se* and is not a violation of the law or the conditions of Appellant's supervised release.  While conditions concerning the terms of supervision must be written and read in a common sense way, *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001) (quoting *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1974), the use of unduly vague conditions of supervised release constitutes an abuse of discretion when the condition "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its

application." See, *United States v. Hugs,* 384 F.3d 762 (9th Cir 2004) (quoting *United States v. Loy,* 273 F.3d 251, 262 (3d Cir. 2001)) In the present case, the subjective interpretation by the probation officer that incorporation documents filed by Appellant constituted employment, and the Court's acceptance of that interpretation, was an abuse of discretion.

For these reasons, the decision by the District Court finding that Appellant violated charges One, Two, Four, Five, and Seven of the petition was an abuse of discretion and the finding should be reversed.

## III.    The Abuse of Discretion in this Case is Not Harmless Error.

If this Court accepts the arguments in this brief and reverses the District Court's findings concerning allegations One, Two, Four, Five, Seven, and Nine in the petitions, there remains charges Three and possibly Five and Six that might be unaffected. However, the Appellant submits that the cumulative errors by the District Court in this matter that are outlined above in this brief prejudiced Appellant to the same extent as a single reversible error. *United States v. Woods*, 710 F.3d 195, 208 (4th Cir. 2013). These errors were the principal basis for the revocation of Appellant's term of supervised release and were not harmless. *United States v. Doswell*, 670 F.3d 526, 530 (4th Cir. 2012).

## **CONCLUSION**

WHEREFORE, for all the reasons stated, this Court should reverse the findings revoking Appellant's term of supervised release and remand this matter for further proceedings with such instructions as this Court deems appropriate.

Dated:  July 2, 2014                              Respectfully submitted,


_____
                    /s/
Stuart O. Simms
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Telephone:  (410) 962-1030
Facsimile:  (410) 385-0869
sos@browngold.com

*Attorney for Appellant*

## REQUEST FOR ORAL ARGUMENT

Curtis Martin, by his counsel, respectfully requests oral argument on the ground that the decisional process will be aided thereby.

_____
/s/
Stuart O. Simms

## RULE 32(A) CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This Brief was prepared using Microsoft Office Word 2010, Times New Roman 14 point font.  It contains 6,080 words, excluding the parts of the Brief exempted by Rule 32(a)(7)(B)(iii).

_____
/s/
Stuart O. Simms

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 2nd day of July, 2014, a copy of the foregoing Appellants' Brief and Joint Appendix were delivered by the Court's ECF system; and a copy of the sealed portion of the Joint Appendix was mailed, first-class, postage prepaid to:

Jefferson Gray
Assistant United States Attorney
Office of the United States Attorney
for the District of Maryland – Northern Division
36 South Charles Street, 4th Floor
Baltimore, Maryland  21201

_____
/s/
Stuart O. Simms